UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Patton Wallcoverings, Inc.
and James J. Patton,                           Case No. 15-10407

      Plaintiffs,                                 Honorable Nancy G. Edmunds

v.

Rami Kseri,

      Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO DISMISS [8]**

This matter comes before the Court on Defendant Rami Kseri's motion to dismiss. Plaintiffs Patton Wallcoverings, Inc. and James J. Patton claim that Defendant committed the torts of defamation and tortious interference with a business relationship by sending a "Press Release" to Plaintiffs' customers and clients. The "Press Release" concerned the outcome of a previous breach of contract action between these same parties and before this Court. For the reasons stated below, Defendant's motion is GRANTED IN PART AND DENIED IN PART.

**I. Facts**

Defendant Kseri is the owner, operator and sole employee of Elite International Enterprise, Inc. ("Elite"). (Compl. ¶ 3.) James Patton is the president and majority owner of Patton Wallcoverings, Inc. (*Id.* ¶ 2.) From March 2010 until August 2011, Elite functioned as sales agent and distributor for Patton Wallcoverings in the Middle East. (*Id.* ¶ 8). In March 2011, the parties formalized their agreement in a sales distribution contract. (Def.'s

Mot., Ex. C, *Elite International Enterprise, Inc. v. Patton Wallcoverings, Inc., et al.*, No. 12-14620, Dkt. 48 at 3, April 24, 2014.) On August 25, 2011, Patton sent Kseri an email stating essentially that, contrary to the terms of the previous agreement, Elite would no long have access to any of Patton Wallcoverings new product lines. (*Id.* at 3-4; Compl. ¶ 10.) In October 2012, Kseri filed suit against Patton Wallcoverings, alleging that it had breached the parties' contract by limiting the product that it would make available to Elite. (Compl. ¶ 13.) On April 24, 2014, this Court ruled that Patton Wallcoverings' conduct constituted a breach of contract. (*Id.* ¶ 18; *see also Elite Int'l Enter., Inc. v. Patton Wallcoverings, Inc.*, No. 12-14620, 2014 WL 1652197, at *5 (E.D. Mich. Apr. 24, 2014) ("The Court finds, therefore, that there is no genuine dispute as to any material fact on the claim that Patton breached the contract by limiting Elite's ability to sell only older product lines."). Following a bench trial and subsequent motion practice regarding the damages calculation, this Court awarded Elite $222,465.01 for lost profits as a result of Patton Wallcoverings' breach. (*Id.* ¶¶ 19-21.)

On September 17, 2014, Defendant sent an email to several of Plaintiffs' competitors, agents, suppliers, and customers. (*Id.* ¶ 25.) The email included an attachment styled as a "Press Release." (*Id.* ¶ 26.) It read as follows (typos, grammatical errors, and emphasis as in original):

<u>*Press Release*</u>

**<u>For Immediate Release</u>**
**September 15th, 2014**
**Elite International Enterprise, Inc. - Troy Michigan, USA**

Gentlemen,

2

As known almost to all, Since 2006 Elite International Enterprises, Inc. had built a solid name as an Exclusive Agent & Distributor in The Middle East & Africa for several wallpaper factories.

Norwall Group Inc. / Patton Wallcoverings is one of the fist companies that we worked with and had extraordinarily success as a result of devotion, dedication and hard work promoting the brand in the region at the time when the whole world was suffering from depression.

After 7 years of success and in spite of all the obstacles Norwall Group Inc. / Patton Wallcoverings was going through... Elite International Enterprises, Inc. was still able to perform sales regardless of all these difficulties... $2.7 Million in sales were made mainly from only 3 collections that had been developed and/or customized by Elite International Enterprises, Inc.

After the business partnership was established with DID Wallcoverings -- Korea.

Unfortunately, things had changed! Unprofessional & Irresponsible behaviors were performed by Mr. Patton. Ignorance, Greed & Betrayal are the words we can describe the new joint venture did harvest! Patton Wallcoverings represent by Mr. James Patton decided to cut Elite International Enterprises, Inc out totally forgotten the fact that I have a valid contract for 3 years! After 2 years in courts, the outcome as the following:

After a bench trial in the United States District Court in Detroit, Judge Nancy Edmunds issued a judgment on September 15, 2014 **in favor** of **Elite International Enterprises, Inc.** and against **Patton Wallcoverings** in the amount of **$272,465.01.**

Judge Edmunds earlier decided that **Patton Wallcoverings breached** Elite's three-year distribution contract by refusing to sell products to **Elite International Enterprises, Inc.**

(*Id.,* Ex. A.)

Although styled as a "Press Release," Defendant only sent the document to competitors, agents, suppliers, and customers of Patton Wallcoverings. This included Les Serban of Sherman Williams, Patton Wallcoverings' largest customer. After receiving the "Press Release," Serban forwarded the email to Patton Wallcoverings, stating, "This does not paint Jim in a very flattering light . . . ." (*Id.* ¶ 36; Ex. B.) Defendant did not send a copy of the "Press Release" to any of its own clients or customers. (*Id.* ¶ 27.)

Plaintiffs allege that they have "suffered a sharp decline in sales since Defendant's distribution of the "Press Release." (*Id.* ¶ 37.) They allege that Sherwin Williams "immediately ceased promoting [Patton Wallcoverings'] product" after receiving it. (*Id.* ¶ 38.) They further claim that "the owner of Galerie, [Patton Wallcoverings'] largest export customer, ceased all orders from [Patton Wallcoverings] and flew from the United Kingdom to the United States to meet with Mr. Patton regarding the substance of the 'Press Release." (*Id.* ¶ 40.) This resulted in an 81% drop in sales "for September 2014 as compared to the previous year." (*Id.* ¶ 41). Finally, they claim that their sales in China and the Middle East dropped 67% for September, October, November, and December 2014 as compared to the previous year. (*Id.* ¶ 39.)

Plaintiffs filed this action on January 30, 2015, alleging claims of defamation, defamation by implication, and tortious interference with a business relationship.

**II. Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the Court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d

545, 548 (6th Cir. 2007). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"Documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10 (c)). "A court may also consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Id.* at 336. In addition, documents not attached to the pleadings may still be considered part of the pleadings when the "document is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (internal quotation marks and citations omitted).

## III. Analysis

### A. Count One – Defamation

The cause of action for defamation has four elements: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication. *Smith v. Anonymous Joint Enter.*, 793 N.W.2d 533, 540 (Mich. 2010). "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Rouch v. Enquirer & News of Battle Creek Michigan*, 487 N.W.2d 205, 211 (Mich. 1992) (quoting Restatement (Second) of Torts § 559)).[1] "Whether a statement

---

[1] Plaintiffs do not distinguish between the statements in the "Press Release" they believe defame Patton Wallcoverings, the corporation, and those they believe defame James

5

is actually capable of defamatory meaning is a preliminary question of law for the court to decide." *Ghanam v. Does*, 845 N.W.2d 128, 143 (Mich. Ct. App. 2014).

Defendant argues that Plaintiffs cannot maintain a claim of defamation because the statements in "Press Release" are either protected as opinion or are substantially true. The Court agrees. Although there is no broad "opinion exception" to defamation, certain statements of opinion are not actionable. *Kevorkian v. Am. Med. Ass'n*, 602 N.W.2d 233, 236 (Mich. Ct. App. 1999). "A libel may consist of a statement of fact or a statement in the form of an opinion, but a statement of opinion is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Fisher v. Detroit Free Press, Inc.*, 404 N.W.2d 765, 767 (Mich. Ct. App. 1987); *see also Falls v. Sporting News Publishing Co.*, 834 F.2d 611, 616 (6th Cir.1987) ("It is the function of the court to determine whether an expression of opinion is capable of bearing a defamatory meaning because it may reasonably be understood to imply the assertion of undisclosed facts that justify the expressed opinion . . ."). Opinions based on disclosed facts are known as "pure opinion." Restatement (Second) of Torts § 566 cmt. b (1977). Additionally, statements that

---

Patton, the individual. Rather, they claim the statements in the "Press Release" defame both equally. "A corporation does not have a reputation in a personal sense; however, it does have a business reputation that can be defamed." *Michigan Microtech, Inc. v. Federated Publications, Inc.*, 466 N.W.2d 717, 720 (Mich. Ct. App. 1991). "One who publishes defamatory matter concerning a corporation is subject to liability to it if the corporation is one for profit, and the matter tends to prejudice it in the conduct of its business or to deter others from dealing with it . . ." *Id.* (quoting Restatement (Second) of Torts § 561 (1977)). *See also Heritage Optical Ctr., Inc. v. Levine*, 359 N.W.2d 210, 213 (Mich. Ct. App. 1984) ("Language which casts an aspersion upon [a corporation's] honesty, credit, efficiency or other business character may be actionable."*)*. The Court does not believe that any of the statements in the "Press Release" defame Patton Wallcoverings as a corporation. Nevertheless, the Court's analysis in determining that the "Press Release" is not defamatory to James Patton applies equally to Patton Wallcoverings.

6

are "not provable as false" and statements that "cannot reasonably be interpreted as stating actual facts about the plaintiff" are also not actionable. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). This includes statements of hyperbole or rhetorical exaggeration. *Ogle v. Hocker*, 279 F. App'x 391, 397 (6th Cir. 2008) (stating that "statements of pure opinion, hyperbole, or rhetorical exaggeration" are protected).

Furthermore, "truth is an absolute defense to defamation." *Porter v. Royal Oak*, 542 N.W.2d 905, 909 (Mich. Ct. App. 1995). "There can be no recovery in defamation for a statement of fact that is true, although the statement is made for no good purpose and is inspired by ill will toward the person about whom it is published and is made solely for the purpose of harming him." Restatement (Second) of Torts § 581A cmt. a (1977). This includes substantial truth:

> The common law has never required defendants to prove that a publication is literally and absolutely accurate in every minute detail. For example, the Restatement of Torts provides that "[s]light inaccuraices of expression are immaterial provided the defamatory charge is true in substance." [Restatement (Second) of Torts § 581A cmt. f (1977)]. Michigan courts have traditionally followed this approach.

*Rouch*, 487 N.W.2d at 214. "Minor inaccuracies do not amount to falsity so long as the substance, the gist of the article be justified . . . . Put another way, the statement is not considered false unless it would have a different effect on the reader from that which the pleaded truth would have produced." *Id.* (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991)). *See also Hawkins v. Mercy Health Servs., Inc.*, 583 N.W.2d 725, 734 (Mich. Ct. App. 1998) ("Therefore, if the gist of an article or the sting of the charge is substantially true, the defendant cannot be liable."). This rule applies regardless of which party bears the burden of proving falsity. *Rouch*, 487 N.W.2d at 214.

Plaintiffs identify the final three paragraphs of the "Press Release" as defamatory:

> Unfortunately, things had changed! Unprofessional & Irresponsible behaviors were performed by Mr. Patton. Ignorance, Greed & Betrayal are the words we can describe the new joint venture did harvest! Patton Wallcoverings represent by Mr. James Patton decided to cut Elite International Enterprises, Inc out totally forgotten the fact that I have a valid contract for 3 years! After 2 years in courts, the outcome as the following:
>
> After a bench trial in the United States District Court in Detroit, Judge Nancy Edmunds issued a judgment on September 15, 2014 **in favor** of **Elite International Enterprises, Inc.** and against **Patton Wallcoverings** in the amount of **$272,465.01.**
>
> Judge Edmunds earlier decided that **Patton Wallcoverings breached** Elite's three-year distribution contract by refusing to sell products to **Elite International Enterprises, Inc.**

(Compl., Ex. A.) Plaintiffs claim that these paragraphs are defamatory for four reasons: (1) because the first paragraph uses the words "unprofessional," "irresponsible," ignorance," "greed," and "betrayal" to describe Plaintiffs; (2) because they raise the false implication that Elite was successful in all of its claims against Patton Wallcoverings as opposed to just one; (3) because they state that Plaintiffs "cut out" and "refused to sell product" to Defendant even though Plaintiffs continued to sell product to Elite until September 2012; and (4) because the final judgment awarded to Elite was $222,465.01, not $272,465.01. (*Id.* ¶¶ 30-34.)

None of these reasons provide a valid claim for defamation. Starting with the first, the statement, "Unprofessional & Irresponsible behaviors were performed by Mr. Patton. Ignorance, Greed & Betrayal are the words we can describe the new joint venture did harvest!" is not actionable because it is protected opinion. In determining "whether a statement is protected hyperbole or is capable of carrying a defamatory meaning" the Court

8

considers four factors: "(1) the common usage or meaning of the allegedly defamatory words themselves, whether they are commonly understood to be loose, figurative, or hyperbolic words; (2) the degree to which the statements are verifiable, whether the statement is objectively capable of proof or disproof; (3) the immediate context in which the statement occurs; and (4) the broader social context into which the statement fits." *Jolliff v. N.L.R.B.*, 513 F.3d 600, 611-12 (6th Cir. 2008). Here, the words used in the above statement are "commonly understood to be loose, figurative, or hyperbolic" and are also not "objectively capable of proof or disproof." *Id.* at 611; *see also Ireland v. Edwards*, 584 N.W.2d 632, 637 (Mich. Ct. App. 1998) (holding that the statement that "someone is not a fit mother" is not actionable because it is necessarily subjective.). This is highlighted by the use of exclamation points, underlining, and bolding throughout these paragraphs. Furthermore, to the extent that these statements could be interpreted as stating actual facts about Plaintiffs, these facts are disclosed. *See Fischer*, 404 N.W.2d at 767. The "Press Release" accurately states that this Court found that Patton Wallcoverings breached its contract with Elite and awarded Elite a money judgment. It is also clear from reading the "Press Release" that this is what Defendant's opinion is based on. These statements are accordingly also protected as "pure opinion." Restatement (Second) of Torts § 566 cmt. b (1977).

The other three reasons all fail because the statements Plaintiffs point to as defamatory are substantially true. Although these paragraphs may contain some minor inaccuracies, their sting or gist is true: the Court did find that Patton Wallcoverings breached its contract with Elite by refusing to sell it certain products and awarded Elite a money judgment as a result. Plaintiffs do not contest this. Instead, Plaintiffs resort to

arguing that the money judgment award was $222,465.01 and not $272,465.01[2] or that they did not totally "cut out" or "refuse to sell product" to Defendant. (Compl. ¶¶ 32-33.) These minor differences do not make the "Press Release" actionable. This is the case even if Plaintiffs are correct that Defendant bears the burden of proving truth in this case. *See J & J Const. Co. v. Bricklayers & Allied Craftsmen, Local 1*, 664 N.W.2d 728, 734 (Mich. 2003) ("Where the alleged defamation concerns both a private figure and a matter of private concern, the burden of proving that the statement was not false rests with the defendant."). "[T]here is no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law." *Estate of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013). The undisputed facts in this case show that the statements in the "Press Release" are substantially true. Therefore, dismissal of Count One is appropriate.

### B. Count Two – Defamation by Implication

Plaintiffs also argue that even if the statements in the "Press Release" are true, they are defamatory by implication. The Court disagrees. "A cause of action for defamation by implication exists in Michigan, but only if the plaintiff proves that the defamatory *implications* are materially false." *Hawkins*, 583 N.W.2d at 732. In *Hawkins*, a hospital issued a press release that inaccurately implied that a nurse was discharged for administering a drug

---

[2] At the time of the "Press Release," the statement that the Court awarded Defendant $272,465.01 was true. Although the Court originally awarded Defendant only $222,465.01, (*see Elite International Enterprise, Inc. v. Patton Wallcoverings, Inc., et al.*, No. 12-14620, Dkt. 78, Sept. 2, 2014), it later amended the judgment on September 15, 2014 to $272,465.01. (*Id.*, Dkt. 81.) This was two days before the "Press Release" was issued. However, following a motion for reconsideration filed after the "Press Release" was already sent, the Court returned to its original damages award of $222,465.01. (*Id.*, Dkt. 87.) Defendant never corrected the "Press Release."

overdose. The press release omitted the "actual justification for her discharge" and created the materially untrue and "clear implication" that the hospital had discharged the plaintiff for her involvement in the administration of the overdose. *Id.*

Here, the "Press Release" does not contain any materially false implications or omissions. And Plaintiffs' present no alternative interpretation of the statements other than a nebulous reference to "conduct much greater than a simple breach of contract." (Comp. ¶ 30.) Plaintiffs argue that the "Press Release" implies that Elite was successful on all of its claims in the prior litigation between the parties, when it was actually only successful on one. *Id.* But the "Press Release" does not create this implication. And even if it did, it would not be materially false. In the prior litigation, Elite's complaint alleged only a single claim for breach of contract, and the Court found that Patton Wallcoverings did commit a breach. If the "Press Release" laid out the Court's rulings in their entirety, the reader would draw that very same conclusion. Plaintiffs' claim for defamation by implication fails.

### C. Count Three – Tortious Interference with a Business Relationship

Plaintiffs' final claim is for tortious interference with a business relationship. Unlike the claims for defamation, Defendant fails to persuade the Court that this claim should be dismissed. Under Michigan law, the elements of tortious interference with a business relationship are: (1) the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy has been disrupted. *Lakeshore Cmty. Hosp., Inc. v. Perry*, 538 N.W.2d 24, 27 (Mich. Ct. App. 1995).

The parties dispute whether Plaintiffs can establish the third element—intentional interference. To establish this element, Plaintiffs must allege not only that the interference was intentional, but also that it was "improper." *Formall, Inc. v. Cmty. Nat. Bank of Pontiac*, 421 N.W.2d 289, 293 (Mich. Ct. App. 1988); *Wetting v. McFeeters*, 304 N.W.2d 525, 529 (Mich. Ct. App. 1981). "Improper means illegal, unethical, or fraudulent." *Formall*, 421 N.W.2d at 293. This has also been described as requiring a plaintiff to show that the defendant committed a "a *per se* wrongful act;" or (2) "a lawful act done with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Feldman v. Green*, 360 N.W.2d 881, 891 (Mich. Ct. App. 1984). If a defendant's act was not *per se* wrongful (*i.e.*, "an act that is inherently wrongful or one that is never justified under any circumstances." *Greenwald v. Greenwald*, 746 N.W.2d 620, 620 (Mich. 2008)), the plaintiff "must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." *BPS Clinical Labs. v. Blue Cross & Blue Shield of Michigan*, 552 N.W.2d 919, 925 (1996).

The determination of whether an interference is improper requires the consideration of several factors, including: "(1) the nature of the defendant's conduct, (2) the nature of the plaintiff's contractual interest, (3) the social utility of the plaintiff's and the defendant's respective interests, and (4) the proximity of the defendant's conduct to the interference." *Jim–Bob, Inc. v. Mehling*, 443 N.W.2d 451, 463 (Mich. Ct. App. 1989). "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *BPS Clinical Labs. v. Blue Cross and Blue Shield of Mich.*, 552 N.W.2d 919, 925 (Mich. Ct. App.1996). However, "[a] defendant may not, with impunity, sabotage the contractual agreements of others, and that defendant's cry

12

that its actions were motivated by purely business interests cannot, standing alone, operate as a miracle cure making all that was wrong, right." *Jim–Bob* at 462-63.

Plaintiffs' complaint adequately states a claim for tortious interference with a business relationship. Although the "Press Release" was not defamatory, Plaintiffs may be able to prove that it was improper. Plaintiffs have alleged that Defendant specifically targeted the "Press Release" to only Plaintiffs' "current agents, suppliers and customers." (Compl. ¶ 57). Plaintiffs additionally point to communications from customers alarmed by the "Press Release" and allege that they suffered a significant decrease in sales with those customers that received the "Press Release." (*Id.* ¶¶ 36-42). At this stage, Plaintiffs' have adequately plead that Defendant committed a lawful act with the wrongful motive of harming Plaintiffs' existing business relationships. *See Amway v. Procter and Gamble*, No. 98-726, 1999 WL 33494857, at *4 (W.D. Mich. June 29, 1999). Defendant argues that the "Press Release" was not improper because it was motivated by the desire to revive Elite's "tarnished" reputation. (Def.'s Mot. at 3.) "However, the fact that certain actions are taken with the intent that they inure to the personal or pecuniary benefit of the defendant cannot . . . weave a broad and impenetrable blanket of immunity from liability for those actions." *Jim-Bob*, 443 N.W.2d at 462. Plaintiffs' claim for tortious interference withstands a motion under Rule 12(b)(6).

## IV. Conclusion

For the reasons set forth above, Defendants' motion is GRANTED IN PART AND DENIED IN PART. Counts One and Two of the complaint are DISMISSED.

SO ORDERED.

      s/Nancy G. Edmunds
      Nancy G. Edmunds
      United States District Judge

Dated: June 25, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 25, 2015, by electronic and/or ordinary mail.

      s/Carol J. Bethel
      Case Manager